## BECKER v. MOLLENAUER.
### No. 2934.

Court of Civil Appeals of Texas. Waco.
Nov. 16, 1950.

Rehearing Denied Dec. 14, 1950.

Kelley, Looney, McLean & Littleton, Edinburg, for appellant.

Hardin & Little, Edinburg, for appellee.

**HALE, Justice.**

Appellant, a dealer in automobiles at Edinburg, Texas, traded a 1947 model Packard to appellee on January 9, 1948, for a 1938 model Oldsmobile, for $1600 in cash and for the additional sum of $295 evidenced by a promissory note to become due in 60 days, the payment of such note being secured by a chattel mortgage on the Packard. Default having been made in the payment of the note, appellant instituted this suit against appellee for recovery of the amount of principal, interest and attorneys' fees alleged to be due thereon, together with a foreclosure of the lien securing the payment thereof. Appellee defended against the suit and by way of cross-action sought damages, actual and exemplary, from appellant upon allegations that the execution of the note and the contract out of which it arose had been induced by

certain fraudulent representations made by appellant to appellee.

The case was tried before a jury. In response to seven special issues numbered as here indicated, the jury found in substance as follows: (1) on the occasion of making the trade concerning the purchase and sale of the Packard, appellant represented to appellee "that the said Packard automobile was in first class mechanical condition in every respect"; (2) such representation was false, (3) was material, and (6) at the time of making the same appellant knew it was false; (4) the reasonable cash market value in Edinburg, on January 9, 1948, of the Packard was $1920.83 and (5) that of the Oldsmobile was $700; and (7) $675 was the amount of money which should be paid by appellant to appellee "as and for punitive damages by reason of the making of the false representations with knowledge of their falsity." The court rendered judgment that appellant take nothing by his suit and that appellee recover of appellant the sum of $954.17. In due time appellant filed his motion for new trial which was overruled and the cause is now properly pending in this court for review.

Under appropriate points in his brief, appellant says the judgment appealed from should be reversed because of alleged errors in the admission of evidence and in the charge of the court to the jury, because of jury misconduct and because of the insufficiency of the evidence to raise some of the issues submitted to the jury or to sustain the findings of the jury with respect thereto.

During the trial appellee introduced Leo Kelley as a witness in his behalf. Kelley testified on direct examination without objection, among other things, that he was a car salesman for appellant in January of 1948; that he heard appellant represent to appellee shortly prior to the time when the trade was made that the Packard "was in A-1 condition"; and that the speedometer reading on the Packard had been turned back at that time from something like 18,000 miles to something between 8,000 and 9,000 miles. This witness was then asked on direct examination as to whether or not it was the custom of appellant to turn back the speedometer on his cars and counsel for appellant objected upon the ground that such testimony was immaterial and irrelevant but the court overruled the objections and the witness was permitted to testify in the presence of the jury that although he did not know whether such was the custom or not "they did do it on several different cars, especially demonstrators." He was further permitted to testify over the timely objections of appellant that "they would usually begin to try to sell demonstrators when we had about 10,000 miles on them" and that "they" would run the speedometers back to somewhere from 3,000 to 5,000 miles.

In our opinion the trial court erred to the prejudice of appellant in overruling the foregoing objections and in permitting the witness Kelley to testify as he did. Even though some unknown person or persons had run the speedometer back on "demonstrators", as testified by the witness, we fail to see how that fact would or could constitute any competent evidence showing or tending to show that appellant had falsely represented to appellee in this case that the Packard was in first class mechanical condition in every respect or that such representation was made with knowledge of its falsity for the fraudulent purpose of deceiving appellee. On cross examination of this witness it was shown that some kind of a dispute had arisen between him and his employer and that he had filed a lawsuit against appellant. We do not think it was proper in the trial of this case to permit the witness to vent his apparent prejudice against his former employer with respect to extraneous matters that were immaterial to this suit, or to permit appellant to be punished on account of the fancied wrongs, if any, which he might have committed against the rights of persons who were not parties to this proceeding and whose violated rights, if any, were not shown to be similar to or in any wise connected with the subject matter of this suit. Goree v. Uvalde Nat. Bank, Tex.Civ.App., 218 S.W. 620, pts. 1 and 2 and authorities (er. dis.); Scales v. Lindsay, Tex.Civ.App., 43 S.W.2d

286, pt. 6 (er. dis.); Stowe v. Wooten, Tex. Civ.App., 37 S.W.2d 1055; Id., Tex.Com. App., 62 S.W.2d. 67.

The court, in submitting this case to the jury, instructed the jurors in part as follows: "You are further instructed that in arriving at your verdict and in your deliberations thereon you must not obtain or receive, and you must not discuss or take into consideration, any evidence not admitted upon the trial, or any matters of law or fact other than the charge given you by the court, the evidence admitted upon the trial and matters of common and general knowledge and experiences common to humanity generally." Appellant duly objected to the foregoing instruction on the ground that it constituted a comment upon the weight of the evidence. The action of the court in overruling the objection was assigned as error in appellant's motion for new trial, and such assigned error is presented here as a ground for reversal.

In the case of Phoenix Ref. Co. v. Tips, 125 Tex. 69, 81 S.W.2d 60, 62, the Commission of Appeals held in an opinion adopted by the Supreme Court that a charge almost identical with the one here involved was erroneous in that it was "on the weight of the evidence, was argumentative, and calculated to mislead the jury because they were not presumed to know what in law constituted 'common and general knowledge'." The rule thus announced was followed and applied in St. Louis B. & M. R. Co. v. Zamora, Tex.Civ.App., 110 S.W.2d 1242 and Petroleum Producers Co. v. Stolley, Tex.Civ.App., 137 S.W.2d 207. In the later case of Gillette Motor Transport Co. v. Whitfield, 145 Tex. 571, 200 S.W.2d 624, the Supreme Court held that while it is the better practice not to instruct the jury to consider matters of common knowledge, the giving of such instruction is not, in and of itself alone, sufficient to present reversible error. As we understand the opinion in this case, however, it is strongly intimated that such instruction would constitute reversible error in any case where it is shown that the jury misunderstood or misapplied the court's instruction and considered matters which it should not have considered. This leads us to a consideration of appellant's further contention that the judgment appealed from should be reversed because of misconduct on the part of the jury.

Appellant says the jury was guilty of misconduct in that it received and considered material evidence during its deliberations which was not introduced in the trial and it arrived at its answer to Special Issue No. 4 by quotient, contrary to the court's instructions.

The court instructed the jurors that "if any juror should happen to have any peculiar knowledge or experience concerning or relating to the issues or questions hereinafter submitted, he must disregard such personal knowledge or experience and must not relate the same to his fellow-jurors"; that "you are not to reach a verdict by any species of lot or chance or any sort of an agreement other than your fair consideration of the evidence admitted before you"; and that "for any wilful or negligent disregard of said instructions you would be subject to the contempt process of the court." These admonitory instructions were based upon sound, abstract principles of law and were obviously given for the laudable purpose of preventing jury misconduct. For reasons which we need not here discuss, however, we doubt whether it was advisable for the court to admonish the jurors that a negligent disregard of his instructions would subject them to contempt proceedings.

The only evidence introduced in the trial with reference to the reasonable cash market value of the Oldsmobile on January 9, 1948, as submitted in Special Issue No. 5, was the testimony of Leo Kelley and of appellant. Kelley testified that such value was between $650 and $700, and appellant testified that such value was about $200. Kelley also testified that the reasonable cash market value of the Packard as submitted in Special Issue No. 4 was from $1900 to $2,000 and appellant testified that such value was about $2500. Another witness, Frank Fausmeier, testified over the objections of appellant that such value would range from around $1850 to $2250,

depending upon various conditions and circumstances about which he was interrogated. Attached to appellant's allegations of jury misconduct was an affidavit of Harry Lucas, one of the jurors in this case. The affidavit of Lucas recited that "While discussing the value to be placed on the Oldsmobile one of the jurors told the group that he either sold or heard of a 1939 Olds, I don't quite recall which, which sold for $800. * * * We agreed on all the issues until we got to the issue on the fair market value of the Packard. There was a difference of opinion as to the price of the Packard auto involved, so it was decided to write down everyone's idea, add the figures together and divide by twelve to arrive at the price of the Packard. This was done and the figure reported to the court was arrived at that way."

■ On the hearing before the court with respect to appellant's allegations of jury misconduct, the juror Lucas was introduced as a witness. Although his memory of what transpired during the deliberations of the jury seems to have been somewhat vague and indefinite, he did testify after having his memory refreshed by the affidavit that he had read it over and knew its contents before signing and swearing to the same and that the matters and facts therein stated were correct. He also testified that the type of automobile which one of the jurors was discussing was an Oldsmobile and that the juror stated the price at which he sold the second hand Oldsmobile was, according to his best recollection, $800. When asked whether the juror relating his experience with the sale of the second hand Oldsmobile came in connection with the discussion of Special Issue No. 5, he stated: "I do not remember, I do not remember much about it, I do remember someone spoke it ought to be worth more than that, he had sold one and I believe the figure was $800." On cross examination he testified that he did not remember the name of the juror who related his experience in the sale of an Oldsmobile for $800, but that such statement was made in the jury room before the jury arrived at the figure which they put down. Only four of the jurors

were introduced as witnesses on the hearing. While two of them testified in effect that they could not remember whether any juror related his personal experience in selling a second-hand Oldsmobile, neither of them testified to any fact which in our opinion tended to show that such an occurrence did not actually happen. The fourth juror, after having his memory refreshed by his prior written statement, testified: "Seemed like one man said he had been offered $500 for a 1938, but I do not remember who he was. There was just two men talking and I was sitting between them". Consequently, we think the undisputed evidence shows conclusively that one or more of the jurors failed to disregard his own peculiar knowledge or experience concerning the issues submitted and that such peculiar knowledge and experience was related to other jurors for the purpose of persuading them that the value of the Oldsmobile involved in this suit ought to be more than the amount to which appellant had testified. In our opinion, the occurrences thus proved constituted jury misconduct within the meaning of Rule 327, Texas Rules of Civil Procedure, which in all reasonable probability did not result from any wilful or negligent disregard of the court's instructions but was due to the fact that some or all of the jurors innocently misapplied the same because they did not understand the legal distinction between matters of common, general and peculiar knowledge.

■ Each of the four jurors testified in effect that after the jury had discussed the evidence relating to Special Issue No. 4, they were unable to agree upon an answer to such issue and thereupon someone suggested that each juror write on a slip of paper what he thought the answer ought to be in order that the foreman might add the total amount thereof and divide the result by twelve. The undisputed evidence shows that this suggestion or agreement was carried out and the result of such addition and division was the exact sum of $1920.83. No juror raised any objection to the amount arrived at in this manner. Although there was some evidence which might tend to show that the intended purpose of the sug-

gested procedure was not to bind each juror in advance to an express agreement that each would abide by the result thus arrived at, we do not see how reasonable minds could differ in concluding from the evidence as a whole that there was at least an implied understanding and agreement on the part of some if not all of the jurors that they would arrive at their answer to Special Issue No. 4 by pursuing the method which they actually did pursue. We think the occurrence thus established constituted jury misconduct.

Under the entire record in this case, we are impelled to the legal conclusion that the jury misconduct in each of the foregoing particulars was highly material and that in all reasonable probability it resulted in injury to appellant. Such misconduct related directly to issues 4 and 5 in the court's charge. Apparently, these issues were submitted to the jury for the purpose of determining whether appellee had sustained any actual damages as a result of the alleged fraud and, if so, the amount thereof. The court instructed the jury that punitive damages could not be allowed in any amount unless the aggrieved party sustained some actual damages and that punitive damages, if assessed, should be in reasonable ratio to actual damages. We might note in passing that the court did not give the jury any instruction by which it might determine for its guidance whether appellee had sustained any actual damages or, if so, as to the amount thereof. If the jurors had accepted the testimony of appellant as to the reasonable cash market value of the Packard, or of the Oldsmobile, or if they had found the difference between such values to be a sum equal to or in excess of $1600, then in any of these events it would have been their duty under the court's charge to find in response to Special Issue No. 7 that nothing should be paid by appellant to appellee as punitive damages.

█ In the light of what has been said, we hold that the trial court erred to the prejudice of appellant in instructing the jury, over appellant's objections, that it might consider matters of common and general knowledge and in refusing to grant appellant a new trial because of jury misconduct. Our holding with respect to jury misconduct is based in part upon the following cases: Texas Electric Railroad Co. v. Wooten, Tex.Civ.App., 173 S.W.2d 463 (er. ref. w.m.); City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259; Motley v. Mielsch, 145 Tex. 557, 200 S.W.2d 622; Dallas Ry. & Terminal Co. v. Garner, Tex.Com.App., 63 S.W.2d 542; Kindy v. Willingham, 146 Tex. 548, 209 S.W.2d 585.

It is not necessary for us to decide whether the competent evidence introduced upon the trial was sufficient to sustain the findings of the jury and the judgment based thereon, or to pass upon any of the other points of error in appellant's brief, as the questions thereby presented will not likely arise upon another trial in the same form in which they are presented on this appeal. Because of the errors which we have discussed, the judgment appealed from is reversed and the cause is remanded to the court below for another trial.